**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LAWRENCE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-06054 |
| ) | Hon. Judge Martha M. Pacold |
| ARGUS GROUP HOLDINGS, LLC, ) | |
| TECHNICAL SOLUTIONS HOLDINGS, ) | Hon. Magistrate Judge Jeffrey Cole |
| INC., EDGEWATER FUNDS, JZ CAPITAL ) | |
| PARTNERS LIMITED, GREGORY JONES, ) | |
| TODD LANSCIONI and BRIAN PEISER, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Leah Bruno
Brian E. Cohen
Emily C. Eggmann
Dentons US LLP
233 S. Wacker Dr., Ste 5900
Chicago, Illinois 60606
(312) 876-3186
*leah.bruno@dentons.com*
*brian.cohen@dentons.com*
*emily.eggmann@dentons.com*

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (ECF No. 30) (the "Response")[1] fails to overcome the arguments and case law presented in Defendants' Memorandum while making clear that the vague allegations on which Smith's claims rely fail to satisfy the applicable pleading standards. Notwithstanding his repeated mantras of "fraud" and generalized claims of other supposedly tortious conduct, Smith's fundamental complaint is that Argus did not pay him pursuant to the Smith Note. While that dispute will proceed forward on the merits, the rest of the Complaint should be dismissed.

## ARGUMENT

### I. THE NON-ARGUS DEFENDANTS SHOULD BE DISMISSED

Plaintiff ignores, and thereby concedes, that the Release requires dismissal of Count II – a claim against TSH for breach of the Smith Note. The Release expressly releases "stockholders" of Argus (*e.g.*, TSH) from any "obligation of liability" under the Smith Note (*e.g.*, the breach of contract claim set forth in Count II).

Plaintiff also does not dispute that the Release covers the non-Argus Defendants, but argues that it does not apply to Smith's non-contractual claims or claims supposedly unknown to Smith when he signed it. Smith is wrong. "[T]he fact that a claim is not specifically listed in the release does not necessarily preclude that claim from having been within the contemplation of the parties and therefore barred." *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 747 (7th Cir. 2017) (internal quotation omitted). Counts III-XI set forth a variety of legal theories, but all seek the same thing: to recover amounts allegedly owed under the Smith Note. The Complaint does not allege or seek any other damages.

Smith's contention that his non-contract claims should not be dismissed because they arise

---

[1] Capitalized terms have the same meaning assigned to them in Defendants' Memorandum in Support of Their Motion to Dismiss (ECF No. 18) (the "Memorandum").

out of "fraudulent misrepresentations and other unlawful conduct" misconstrues Illinois law. Smith alleges that he relied on Defendants' alleged misrepresentations when he *accepted the Smith Note*. (Compl. ¶ 38.) Thus, he knew about the statements that form the basis of all of his claims when he signed the Smith Note. Whether he knew that the statements were purportedly false when "does not preclude release of the fraud action." *See ADM All. Nutrition*, 877 F.3d at 747 (release covered fraud claims unknown at the time it was executed because they arose out of the contract at issue). And indeed, none of Plaintiff's claims would exist but for the Smith Note.

The Response cites a number of cases for the proposition that a release does not apply to claims "not within the contemplation of the parties." But Smith cannot credibly argue that claims about the Smith Note were not within consideration when he signed the Smith Note. This is *exactly* what was negotiated and contemplated by the parties when Smith agreed to release the non-Argus Defendants for liability arising out of the Smith Note. If Smith was not releasing the non-Argus Defendants from such liability, he was not releasing them from anything. *See Holmes v. Godinez*, 991 F.3d 775, 783 (7th Cir. 2021) ("contracts must be construed to avoid absurd results").

**II.    SMITH FAILS TO ADDRESS DEFENDANTS' ARGUMENTS ON COUNT II**

Even if Smith did not release Count II, it should be dismissed because TSH is not a party to the Smith Note. The Response does not address any of the Memorandum's authority that stands for the proposition that a non-party cannot be sued for breach of that contract. (Resp at 6-7.) These cases establish that TSH had no obligations under the Smith Note and cannot be liable for any alleged breach. Smith's silence in response makes clear dismissal of the claim is appropriate.

**III.   SMITH'S COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED (COUNT V)**

Plaintiff does not adequately allege the who, when, where, and how of the alleged fraud. Indeed, the paragraphs cited in the Response do little to address Count V's deficiencies. For example, Smith asserts that Paragraphs 2-3, 7-8, 13-15, 16-17, and 19 allege the "where" of the

alleged fraud, but none do. They merely assert where Defendants hold their board meetings or are principally located. *See Nalco Co. v. Chen*, No. 12 C 9931, 2013 WL 4501425, at *4 (N.D. Ill. Aug. 22, 2013) (fraud claim failed to "provide the location of the alleged misrepresentations").

Similarly, although Smith offers the following paragraphs as satisfying the "who" of Smith's fraud claim, none actually allege any form of fraud:

- Paragraph 27 alleges that (at some unstated time) Lanscioni and Peiser negotiated the AGI Note but says nothing about any purported fraud or any representations about the Smith Note.[2]

- Paragraph 28 alleges that (at some unstated time) Lanscioni and Peiser assured Smith that a "default of the AGI Note was unlikely." There are no allegations about the Smith Note, and in all events, an indefinite statement that Argus was "unlikely" to default is insufficient to give rise to fraud. *See LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 568 (7th Cir. 1991) (representations "too general and difficult to substantiate" a claim for fraud).

- Paragraphs 31 and 36 allege that Lanscioni and Peiser told Smith that the Smith Note would be paid by 2019. In other words, Smith alleges that Lanscioni and Peiser told Smith that Argus would perform its obligations under the Smith Note. Smith does not allege where these supposed misrepresentations were made, and they cannot support a claim for fraud for the reasons set forth below.

- Paragraph 68 alleges that Jones sent Smith a letter (Ex. 5) notifying him about an event of default under the Smith Note's senior indebtedness provision. But there are no allegations that anything in the letter was untrue and Smith could not have relied on the letter because it was sent years *after* Smith signed the Smith Note.[3]

- Paragraph 190 baldly asserts that the Individuals "made material misrepresentations to Smith," but it does not provide any information about what these supposed misrepresentations were as required by Rule 9(b).

Further, many of the cited paragraphs impermissibly assert that these supposed misrepresentations were made "on behalf of Defendants;" but the notion that the Individuals were

---

[2] Plaintiff repeatedly asserts that the AGI Note "effectively became the Smith Note." Whatever that means, Smith does not allege Defendants made any alleged misrepresentations about the Smith Note itself.
[3] Smith does not explain how a letter sent by Argus could serve as the basis for a fraud claim against any of the other Defendants.

3

at *all* times speaking on behalf of *each other* and *all four corporate Defendants* – Argus, TSH, Edgewater and JZ Capital – defies common sense.

### A. Smith Does Not Allege a Scheme to Defraud

None of the Complaint's paragraphs include any "specific factual allegations sufficient to infer any misrepresentations were made with fraudulent intent." *See Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *15 (N.D. Ill. Mar. 1, 2022). Instead, Smith offers only conclusory allegations that Defendants "had no intention of keeping [their] promise" which are "insufficient to state a claim for promissory fraud." *Id*.

While Plaintiff insists he alleges a "years-long scheme to defraud," the Complaint only alleges that Smith executed the Smith Note in 2014 and that Argus failed to pay him in 2019. But the mere passage of years does not constitute a scheme. While Smith may be correct that "[a]s few as two broken promises may be sufficient" to state a claim for promissory fraud, the Complaint does not even allege that. Smith alleges only a single supposedly broken promise: the promise to pay him the principal and interest he was supposedly owed under the Smith Note.

### B. Smith Did Not Rely On The Alleged Misrepresentations About TSH

Count V should be dismissed to the extent that it is based on Defendants' alleged misrepresentations about a default declared by TSH. (*See* Compl. ¶¶ 197-99.) The paragraphs Smith cites to satisfy the element of reliance all assert that Smith relied on Defendants' statements by accepting the Smith Note in April 2014. However, Defendants' alleged statements about TSH's declared default did not occur until 2019. (*E.g.*, *id*. ¶ 74.) Plaintiff asks the Court to "infer[]" that he relied on these after-the-fact statements by "stay[ing] complacent for years," by remaining an Argus employee, and by delaying his efforts to take legal action. (Resp. at 10, n.8.) But this supposed reliance is not alleged in the Complaint, or relevant to any harm Smith allegedly suffered.

4

## IV. THE ICFA CLAIM FAILS (COUNT VI)

Smith's argument that ICFA claims *not* based on fraud do need to meet Rule 9(b)'s requirements is irrelevant because Count VI is not such a claim -- it *does* allege fraud as it asserts Defendants intentionally made statements "they knew to be untrue" in order to "deceive" Smith "under false and fraudulent pretenses." (Compl. ¶¶ 217-222.) Such claims, even according to Smith's legal authority, are subject to Rule 9(b)'s standard. *See Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1082 (N.D. Ill. 2018).

### A. Smith Lacks Standing Under the ICFA

Smith fails to address most of the legal authority presented by Defendants that establishes that disputes between businessmen who are not consumers of each other's goods or services do not fall under the ICFA. Indeed, the Illinois "legislature could not have intended [the ICFA] to apply to a case between businessmen." *Century Univ. Enterps., Inc. v. Triana Dev. Corp.*, 510 N.E.2d 1260, 1270 (Ill. App. Ct. 1987) (quotation omitted); *see also Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 711 (N.D. Ill. 2006) (alleged misconduct did not implicate "consumer protection concerns"); *Van Brock v. Chicagoland Serv. Corp.*, No. 90 C 2310, 1990 WL 84534, at *4 (N.D. Ill. June 8, 1990) ("members of a joint venture who were allegedly deceived into withdrawing from the joint venture" lacked standing).

Smith's argument that *Nalco* is inapplicable because Defendants are supposedly "in the business of offering securities to shareholders of acquisition targets. . . ." fails. (*See* Resp. at 12) *First*, the Response's allegation that *all* Defendants are in the business of offering securities does not appear in the Complaint and should not be considered.[4] *Second*, *Nalco's* holding had nothing to do with the business of the alleged wrongdoer. The *Nalco* court dismissed an ICFA

---

[4] Smith likely failed to include such an allegation because it is not true.

counterclaim because the counterclaimant was not a consumer of the counter-defendant's goods or services. 2013 WL 4501425, at *6. Similarly, Smith is *not* a consumer of Defendants.

Plaintiff's continued reliance on *Lyne v. Arthur Andersen* 772 F. Supp. 1064, 1066 (N.D. Ill. 1991) is also misplaced. The *Lyne* plaintiff was an unsophisticated consumer who purchased securities on an open market. Here, Smith (a sophisticated businessman) accepted a promissory note in exchange for company equity as a part of a private transaction. Smith's other legal authority does not change the analysis. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (ICFA claim related to *consumers'* complaint about gasoline prices); *Wislow v. Wong*, 713 F. Supp. 1103, 1105 (N.D. Ill. 1989) (not analyzing whether businessman have ICFA standing).

### B. Count VI is Duplicative of Count I

The Response tries to inflate Count VI into an ongoing scheme to defraud. But at bottom, the Complaint alleges that Defendants promised Smith they would pay him, but then failed to do so. Simply using the language of fraud to restate a breach of contract claim does not give rise to an ICFA claim. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).[5] The Illinois Supreme Court has held that to be actionable under the ICFA, the alleged misconduct must "involve[] more than the mere fact that a defendant promised something and then failed to do it." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (2005). There must be "deceptive actions or practices *distinct from* any underlying breach of contract . . . the consumer fraud and contract claims cannot rest on the same factual foundation." *Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'n Servs., Inc.*, 190 F.Supp.3d 765, 771 (N.D. Ill. 2016) (quoting *Greenberger*, *supra*). But here, Smith does not allege any wrongful conduct beyond Defendants'

---

[5] Smith erroneously describes *Greenberger* as disposing of an ICFA claim at summary judgment. (Resp. at 13, n.13.). While the appeal addressed district court rulings on both a motion to dismiss and for summary judgment, it affirmed the dismissal of the ICFA claim on the pleadings. *Id*. at 394.

failure to pay Smith. The premise of both Counts I and VI is that Smith did not receive what he believes he is entitled to under the Smith Note. Smith's legal authority is distinguishable as *Boyd Grp. (U.S.) Inc. v. D'Orazio*, held that an ICFA claim was not duplicative of a contract claim because the alleged misrepresentations were about *existing facts*. No. 14 CV 7751, 2015 WL 3463625, at *9 (N.D. Ill. May 29, 2015).[6]

## V. THE EXCHANGE ACT CLAIMS SHOULD BE DISMISSED (COUNTS III AND IV)

### A. Plaintiff's PLSRA Claim Fails

#### *A. Smith Does Not Plead Scienter Under the PSLRA.*

Smith fails to address (or even mention) the pleading standard mandated by the PSLRA. Smith does not adequately plead scienter and this failure is fatal to Count III. Smith cites *In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916 (N.D. Ill. 2019), but that case supports Defendants as the court made clear that an allegation of motive fails when it is "[a] generalized motive common to all corporate executives, such as the motive to pretend nothing is wrong to avoid a loss. . . ." *Id.* at 933-34. Here, the Complaint lacks allegations that each Defendant "benefitted in some concrete and personal way from the purported fraud." *Id.* at 933 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000)).

Smith points to Paragraph 170 as containing an allegation of scienter but that conclusory Paragraph – made against *all* Defendants (except Jones) – is a textbook example of the kind of conclusory, group-pled allegation that has been found inadequate under the PSLRA. It fails to plead a "strong inference of scienter with respect to each individual defendant." *See Cornielson v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019). It also fails to allege any facts with particularity. *See W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495

---

[6] Smith notes that he is permitted to plead alternative theories of relief. (Resp. at 12, n.12.) However, the Complaint does not plead Count VI in the alternative.

7

F. Supp. 3d 622, 667 (N.D. Ill. 2020).

In order to allege "conscious misbehavior or recklessness," the PSLRA requires Smith to "specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading." *Rubinstein v. Gonzalez*, 241 F. Supp. 3d 841, 851 (N.D. Ill. 2017) (quotation omitted). None of the paragraphs cited in the Response (at 15) contain "facts approaching *a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts*," *See In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007) (emphasis in original), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009).

- Paragraphs 170-72 allege that *all Defendants* (except Jones) "acted with scienter," that their "subsequent actions" demonstrate their reckless disregard, and that they all "acted with knowledge and/or reckless disregard for the truth[.]" There is no allegation of fraud or knowledge of facts that each Defendant did not disclose.

- Smith asserts that he pled "pertinent misrepresentations" in 10 paragraphs, but:

    o   Several of these paragraphs impermissibly assert allegations collectively against all Defendants.

    o   Paragraph 31 alleges that Lanscioni and Peiser told Smith he would be paid by 2019, but does not explain how those Defendants knew at that time that their statements were false or misleading.

    o   Paragraphs 55, 56, and 58 do not identify which Defendant supposedly made the statement that Plaintiff believes is misleading.

    o   Paragraphs 68 and 70 do not assert why the identified statement was misleading.

    o   Paragraph 83 does not allege any statement by a Defendant.

- Plaintiff asserts that he pleads "subsequent actions related to the fabrication of alleged Senior Indebtedness and the threatened default related thereto." But Paragraph 68 simply describes a letter Argus sent to Smith notifying him of the THS demand. Paragraph 69 impermissibly brings allegations collectively against all Defendants. Paragraphs 72-78 do not cite any statement that is alleged to be misleading or the reasons why that statement was misleading.

- Plaintiff cites to Paragraphs 57-58 and 88 for "the refusal to provide Smith with

8

> requested information regarding the alleged default and financial condition of Argus." But these vague allegations do not explain when Smith requested any information, identify which Defendant supposedly refused, or explain how this gives rise to an inference of conscious misbehavior or recklessness.

- Plaintiff notes that Paragraphs 92-94 allege "[t]hreats to fire or sue" Smith if he "sought to enforce his right to compensation." However, these vague allegations are impermissibly group-pled.

### B.  *Allegations of Scienter Cannot be Group Pled under the PSLRA.*

The Complaint fails to satisfy the PSLRA's requirement that a plaintiff identify *specific actors* responsible for *particular conduct*. *See, e.g.*, *Cornielson*, 916 F.3d at 599-602 (PSLRA requires that "plaintiffs must create a strong inference of scienter with respect to *each individual defendant*" (emphasis in original)). All of the supposedly wrongful conduct alleged in Count III was somehow taken by "Argus, TSH, Edgewater, JZ Capital, Lanscioni, and Peiser." (*See* Compl. ¶¶ 159, 161-66, 168-73.) Smith does not allege individual material misrepresentations or scienter on behalf of any one Defendant (aside from Paragraph 174, where Smith offers the conclusory statement that Lanscioni and Peiser made certain "aforementioned misrepresentations").

### B.  The Section 20(a) Claims Should Be Dismissed (Count IV)

Smith's Section 20(a) claim alleges that the Individuals made "fraudulent statements" and, therefore, Count IV is also subject to Rule 9(b)'s heightened standard, as Courts in this district have overwhelmingly held. *See, e.g.*, *Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1110 (N.D. Ill. 2004); *Johnson v. Tellabs, Inc.*, 303 F. Supp. 2d 941, 969 (N.D. Ill. 2004); *766347 Ontario Ltd. v. Zurich Cap. Markets, Inc.*, 274 F. Supp. 2d 926, 983 (N.D. Ill. 2003). As explained above, Smith failed to plead the Individuals' fraudulent statements with this required specificity, offering only vague references to their "ability to direct (or prevent) the fraudulent statements detailed in Count III." Again this is insufficient.

9

## VI. THE BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED (COUNTS VIII, IX AND X)

### A. TSH Did Not Exercise Managerial Authority (Count VII)

Illinois law does not support Smith's argument that TSH owed Smith a fiduciary duty based on the fact that it owned a majority interest in Argus. The Complaint does not allege that TSH exercised the authority of a manager for Argus. This is unchanged by Plaintiff's argument that Article IV of Argus's Operating Agreement provides TSH "extensive voting rights." The right to vote for the members of Argus's management committee – even an "extensive" right – does not constitute exercising the "authority of a manger." And Smith does not cite any other supposed managerial authority arising out of Article IV that TSH allegedly wielded.

Smith contends that the cases cited in the Memorandum -- *800 S. Wells* and *Katris* – are inapposite because the defendants in those cases did not have any "unique rights and privileges." (Resp. at 18, n.18.) But whether a member has "unique rights and privileges" is not relevant to the inquiry. A member must exercise managerial authority in order for a fiduciary duty to arise under subsection (g)(3) of the LLC Act. Smith has not, and cannot, allege any such authority here.

Plaintiff also urges the Court to ignore the Illinois Appellate Court holdings from *800 S. Wells* and *Katris* in favor of *Moede v. Pochter*, 710 F. Supp. 2d 683 (N.D. Ill. 2009). But *Moede* has no bearing on the issue. In that case, there was no assertion that defendants "exercised the authority of a manager" and the court found a duty existed under subsections (a) – (d) of the Act. *Id*. at 688-89. And the *Moede* defendants "admitted" that they "clearly violated their fiduciary obligations" under other subsections of the LLC Act. *Id*.[7] No such facts or admissions exist here.

---

[7] In all events, the *Moede* criticism of *Katris* was written in 2009, and subsequently, the Illinois Appellate Court's 2018 opinion in *800 S. Wells* contains an extensive affirmation of *Katris*. *800 S. Wells Com. -LLC v. Cadden*, 2018 IL App (1st) 162882, ¶¶ 31-37. In the absence of contrary Illinois Supreme Court precedence, this Court should follow the holdings from the Illinois Appellate Courts. *Padilla v. Cnty. of Cook*, No. 98 C 1363, 1999 WL 284359, at *7 (N.D. Ill. Apr. 28, 1999).

### B. Count IX Fails to State a Claim Against the Individuals

Plaintiff's attempts to split the pleading standards applicable to Count IX are irrelevant as the Complaint fails to state a claim for breach of fiduciary duty under either pleading standard.[8]

The first alleged breach of fiduciary duty is that the Individuals "threaten[ed] Argus with a default under the TSH Notes. . . ." (Compl. ¶ 266.) But there are no allegations that the Individuals threatened Argus, and Exhibit 8 to the Complaint makes clear that it was *TSH* that sent Argus a notice of default on November 22, 2019. That letter appears on TSH letterhead (*see* Ex. 8) and was sent by TSH's CFO, Christopher Kuhl. (*Id*. ¶ 60.) And even if the Individuals were involved in sending the letter – there are no allegations that they were – it would not make sense to attribute to the Individuals in their capacity *as managers of Argus* a "threat" made *to Argus*.

Nevertheless, Plaintiff tries to pin the Individuals with TSH's conduct by directing the Court to Exhibit 5 of the Complaint, a November 26, 2019 letter from Defendant Jones to Plaintiff Smith. But this misdirection does nothing to salvage Count IX because the November 26 letter was not a threat to Argus at all – it was a notification to Smith that TSH had sent the November 22 notice of default.[9] Sending such a notification does not constitute a breach of fiduciary duty and does nothing to cure the deficiencies outlined in the initial Memorandum.

The second alleged breach– that the Individuals purportedly "seize[d] Smith's ownership interests in AGI and usurp[ed] the value of the Smith Note – also fails. *First*, the Complaint does not allege that the Individuals "seized" or "usurped" anything. It is Argus (not the Individuals) that currently owns Smith's prior interest in AGI and which allegedly owes Smith money pursuant to the Smith Note.

*Further*, the Memorandum explained that a number of provisions in the Argus Operating

---

[8] Plaintiff concedes that Rule 9(b)'s heightened standard applies to at least part of Count IX.
[9] The November 26 notice was sent by Jones – there is nothing linking the letter to Lanscioni or Peiser.

11

Agreement expressly authorized the Individuals in their "sole discretion" to make decisions about whether Smith should be paid under the Smith Note in the face of TSH's demand for payment and the Smith Note's subordination provisions. The LLC Act allows a limited liability company to "enter into an operating agreement to regulate the affairs of the company and the conduct of its business and to govern relations among the members, managers, and company." 805 ILCS 180/15-5(a). The LLC Act only governs the relationship between managers and members "[t]o the extent the operating agreement does not otherwise provide. . . ." *Id*. Here, the Operating Agreement explicitly authorized the Individuals, in their "sole discretion," to decide whether Argus could pay Smith pursuant to the Smith Note. (Compl. Ex. 1, §§ 3.2.2, 3.2.3, 3.2.6, 3.2.10.) As such, the conduct alleged in the Complaint are expressly contemplated and permitted by the Act.

The Response insists that the Complaint asserts "three distinct ways" that the Individuals breached their fiduciary duties, and accuses Defendants of "conflat[ing] the allegations in Paragraphs 266 and 268." (Resp. at 19, n.20.) But Paragraph 268 does not allege any conduct – it only alleges (in a conclusory manner) that the Individuals' breaches were willful and intentional.

Plaintiff accuses Defendants of ignoring the Complaint's allegations that Smith was blocked from reviewing TSH financial records. (Resp. at 19, n.21 (citing Compl. ¶¶ 56-58).) But none of these paragraphs allege that: (1) this conduct was a breach of fiduciary duty; (2) Smith suffered any damages from not being able to review these records; or (3) the Individuals were responsible for this conduct (*see* Compl. ¶ 57 (referring to unnamed "TSH executives")).

    **C.    There is No Aiding and Abetting Claim Alleged**

Even if Counts VIII and/or IX survive dismissal – they should not – Smith failed to state a claim for aiding and abetting breach of fiduciary duty against Edgewater or JZ Capital. None of the Complaint's cited allegations say anything about what Edgewater or JZ Capital actually did to aid and abet the other Defendants. (*See* Resp at 21, *citing* Compl. ¶ 28 (no allegations of conduct

12

by Edgewater or JZ Capital or about the Smith Note); ¶ 56 (alleged conduct by TSH's CEO, but not Edgewater or JZ Capital); ¶ 79 (conclusory allegation without an explanation as to how Edgewater or JZ Capital increased intercompany debt attached to Argus); ¶¶ 83-85 (vague allegations lacking facts about Edgewater or JZ Capital).

Smith contends that *all* of the Individuals' alleged conduct was done on behalf of *all* of the corporate defendants. (Resp. at 21.) But under this approach, Smith is seeking to "double-count" this conduct by the Individuals as *both*: (1) breaches of fiduciary duty by the Individuals in Count IX and by TSH in Count VIII; *and* (2) aiding and abetting those same breaches by Edgewater and JZ Capital in Count X. Such claims are impermissible under Rule 9(b). *See Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 851 (N.D. Ill. 2012), aff'd, 725 F.3d 815 (7th Cir. 2013). It is also insufficient where the Complaint is devoid of any actual allegations of conduct by Edgewater and JZ Capital. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8").

### VII. DEFENDANTS' ALLEGED CONDUCT IS PRIVILEGED (COUNT XI)

#### A. The Individuals Acted on Behalf of Argus Subject to a Conditional Privilege

The Response argues that the Individuals did not act subject to a conditional privilege because they did not act in Argus's best interests. (Resp. at. 21-22.) But to overcome the conditional privilege, a plaintiff "must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989). No such allegations appear in the Complaint.

The Response contends that over 70 Paragraphs from the Complaint allege "unjustified or malicious" behavior by the Individuals. However, none of them actually allege that the Individuals acted to further their own personal interests or intended to injure Smith. For example, Paragraphs

13

68 and 69 describe Jones delivering a letter to Smith informing him that an event of default had occurred, but there is no allegation that this conduct was undertaken to further Jones' own interests or was intended to injure Smith. Without such facts, Plaintiff cannot overcome the privilege.

### B. TSH, Edgewater, and JZ Capital Acted on Behalf of Argus Subject to a Conditional Privilege

Plaintiff also does not plead that TSH, Edgewater, or JZ Capital acted in a manner that was intentional, unjustified, and outside of Argus's best interests. Without such allegations, the companies are protected by the conditional privilege. *See Oak Agency, Inc. v. Warrentech Corp.*, No. 96-C-1106, 1997 WL 232619, at *2 (N.D. Ill. May 2, 1997). Importantly, Smith's arguments ignore the fact that TSH's actions with regard to intercompany debt occurred pursuant to the TSH Notes. Moreover, Smith fails to allege which actions were perpetrated by TSH, Edgewater, or JZ Capital or how they induced Argus to breach the Smith Note.

### VIII. PLAINTIFF'S RESCISSION CLAIM SHOULD BE DISMISSED (COUNT XII)

The Response fails to explain how the parties can be restored to the status quo ante. *Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 670 (7th Cir. 2013). While Plaintiff notes that Smith was an owner in Argus, that is not the relief Count XII seeks: Smith requests that his "***ownership interest in AGI should be restored*** by awarding him an equal and commensurate interest in *Argus*." (Compl. ¶ 297 (emphasis added).) This is not the status quo ante; this is a request for an ownership interest in Argus to satisfy Smith's alleged loss of his former ownership interest in AGI.

The Response also fails to address Defendant's argument that Smith has an adequate remedy at law: the money damages he seeks in Count I. Smith suggests that the Court should not resolve this issue on the pleadings because Smith is entitled to seek both remedies and some of the authority cited by Defendants involved cases decided at a later stage of litigation. (Resp. at 25, n.26.) But Plaintiff does not contest that money damages are available and Smith cannot seek

14

rescission if there is an adequate remedy at law. There is no reason that the Court cannot resolve this issue on a motion to dismiss, as numerous other courts have done. *See*, *e.g.*, *Applied Commosity Servs., Inc. v. Chase Manhattan Futures Corp.*, No. 89 C 08860, 1990 WL 129632, at *1 (N.D. Ill. Aug. 27, 1990) (citations omitted) (dismissing rescission claim because plaintiff had adequate remedy at law); *Farmer v. Koen*, 542 N.E.2d 1326, 1328 (Ill App. Ct. 1989) (same).

Finally, the Response offers no explanation for Smith's delay in pursuing the remedy of rescission, which must be exercised "promptly." *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 960 (N.D. Ill. 2013) (dismissing rescission claim after unreasonable 7-month delay).

## IX. PLAINTIFF DOES NOT ALLEGE A CIVIL CONSPIRACY CLAIM (COUNT VII)

Plaintiff misconstrues Defendants' argument for dismissal of Count VII -- Smith's claim civil conspiracy claim is not merely "duplicative" -- it fails because it is impermissibly based on the exact same set of facts against the exact same group of defendants as the other tort claims. (*See* Compl. ¶ 238.) A claim for civil conspiracy must allege misconduct by *additional* defendants or *additional* facts as compared to the underlying tort claim. Count VII fails it is premised on the very same matters and parties as the other claims so it adds nothing and there is no basis for further or additional liability.

## **CONCLUSION**

For the reasons set forth above, Defendants request that the Court enter an order: (1) granting the Motion; (2) dismissing Counts II-XII of the Complaint; and (3) granting Defendants such other and further relief as is appropriate.

15

Respectfully submitted,

DENTONS US LLP

By: */s/ Leah R. Bruno*
Leah R. Bruno (#6269469)
Brian E. Cohen (#6303076)
Emily C. Eggmann (#6335831)
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
(312) 876-8000
leah.bruno@dentons.com
brian.cohen@dentons.com
emily.eggmann@dentons.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record.

                                                    By:    /s/ *Leah R. Bruno*
                                                                   Leah R. Bruno

123412404